SWEARINGEN & COUILL vs. STEAMBOAT LYNX.

The Mississippi *river*, from the northern to the southern boundary of the State of Missouri is one of the waters of the State referred to in the statute concerning boats and vessels.

## ERROR to St. Louis circuit court.

### STATEMENT OF THE CASE.

This was a demand under the statute   The plaintiffs alleged that they were owners of the ·steamboat Ohio, and that on the fifth day of April, 1845, as the Steamboat Ohio was ascending the Mississippi river, and had got nearly opposite Grafton, a town in Illinois, on said river, the steamboat Lynx was through the carelessness, remissness and negligence of her officers and crew, propelled against the steamboat Ohio, which last mentioned boat was thereby damaged to the amount of three hundred and twenty-five dollars.

The general issue was pleaded.   At the trial the plaintiff's after proving their ownership of the steamboat Ohio, offered and gave evidence tending to prove that the collision had occasioned damages to the amount of two hundred and fifty dollars to the steamboat Ohio, and that the collision was produced by the bad conduct of the officers and crew of the Lynx, the officers and crew of the steamboat Ohio being free from blame.   The defendants offered evidence tending to prove that the collision was attributable to the bad conduct of the officers and crew of the steamboat Ohio, and that the officers and crew of the Lynx were free from blame.

The defendant asked and the court gave the following instructions.

1st. The plaintiffs cannot recover in this action, without proving to the satisfaction of the jury that the injury complained of was done in the State of Missouri.

2d. Unless the jury find from the testimony that the steamboat Lynx at the time of the injury complained of, was a boat used in the navigation of the waters of this State, they ought to find their verdict for the defendant.

3d. The jury ought to find a verdict for the defendant, unless they find from the evidence that the collision between the two boats was occasioned by the negligence or misconduct of the persons in charge of the Lynx, and not to the negligence or misconduct of the persons in charge of the Ohio.

To the giving of which instructions the plaintiffs excepted at the time.

The court of its own motion gave the following instruction, viz:

The river Mississippi from the northern boundary of the State of Missouri to the southern boundary of the State of Missouri, and to the middle of the main channel thereof is one of the waters of this State, within the act concerning boats and vessels.

To the giving of which the plaintiffs at the time excepted.   The plaintiffs asked the following instruction, to wit:

The river Mississippi from the northern boundary, of the State of Missouri to the southern boundary of the State of Missouri is one of the waters of the State referred to in the act concerning boats and vessels;

Which the court refused, and plaintiffs excepted.   The verdict was for defendant.   The plaintiffs moved for a new trial, assigning for cause the error of the court in giving and refusing instructions, and the court overruling the motion, they excepted and filed their bill of exceptions.

GANTT, for plaintiff in error.

1. The State of Missouri has concurrent jurisdiction with all conterminous sovereignties

Swearingen & Coriel vs. Steamboat Lynx.

over all rivers bordering on the State so far as such rivers form a common boundary to the State of Missouri and any other State.   Art. X of State Constitution, sec. 2.

2.  The river Mississippi is one of the waters of this State from bank to bank, so far as it is a boundary between the State of Missouri and other States of the Union.  Ib. Ibid.

3.  The extreme inconvenience of the rule indicated in the instructions of the court and the difficulty of ascertaining either by night or day whether a collision occurred to the west or east of a perpetually shifting line, would of themselves be conclusive against the adoption of the rule.   It is a rule of law that no statute shall be so construed as to produce abs urd or inconvenient consequences.  1 Thomas Coke, page 19 and following; Devains on statutes 756 (side paging) 70 top paying, vol. 7 of the Law Library.


GAMBLE & BATES, for defendant.

1.  The proceeding against a steamboat under our statute can only be maintaind for a cause of action arising within this State.   Noble vs. steamer St. Anthony, 12 Mo, Rep., 262; S. B Raritan vs. Pollard, 10 Mo. Rep., 583.

2.  The State of Missouri has jurisdiction, and the laws of the State have their operation only to the middle of the main channel of the Mississippi river.  Missouri Constitution ¹ article.


NAPTON, J., delivered the opinion of the court.

The collision which occasioned this suit took place in a portion of the Mississippi river forming the boundary between this State and Illinois, and the question of fact submitted to the jury was whether it occurred upon the east or west side of the line which constitutes the middle of the main channel of that river, the court declaring the law to be against any jurisdiction over the case, if it happened on the east of said channel.   The constitution of this State has fixed the middle of the main channel of the Mississippi river as our eastern boundary; but the 10th article declares "This State shall have concurrent jurisdiction on the river Mississippi, and on every other river bording on the said State, so far as the said river shall form a common boundary to the said State, and any other State or States now or hereafter to be formed and bounded by the same."   This provision is also found in the act of congress of March 6, 1820, authorizing a convention for a State Constitution.

The question to be decided is not one of conflicting jurisdiction with a sister State.   It concerns only the proper construction of an act of this State, which is restricted to vessels "used in navigating the waters of this State."   The question is whether a boat navigating the waters of the Mississippi where that river runs between us and Illinois, is navigating the waters of this State, within the meaning of this act.

We have heretofore said, that the act had no extra territorial operation, but even independent of the constitutional provision above refer-

red to, we should not incline to follow the shifting channel of the Mississippi for the purpose of conforming to the exact line of territorial dominion. The legislature might have embraced the whole State of Illinois within the operation of the act, or the whole world and the rights or territorial jurisdiction of no one would have been affected.

The construction given by the circuit court would produce great and unnecessary inconveniences, and if adopted in Illinois as well as here, would have the effect of establishing on our border a sort of neutral territory where contracts could not be enforced, and wrongs must go unredressed.

Judgment reversed and cause remanded.